UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
THERESA A. CIRA,                          :
                                          :
               Plaintiff,                 :
                                          :
       -against-                          :                **OPINION AND ORDER**
                                          :                15-CV-6704 (DLI)
COMMISSIONER OF SOCIAL SECURITY,  :
                                          :
               Defendant.                 :
--------------------------------------------------------x

**DORA L. IRIZARRY, Chief United States District Judge:**

Theresa A. Cira ("Plaintiff") filed an application for Supplemental Security Income ("SSI")

benefits on December 10, 2012, which received a protective filing date of October 19, 2012.  *See*

Certified Administrative Record ("R."), Dkt. Entry Nos. 8 & 12 at 112-17.  Plaintiff's application

was denied on February 6, 2013 (*Id.* at 74-79), and she timely requested a hearing before an

Administrative Law Judge ("ALJ") (*Id.* at 80-82).  On December 4, 2013, Plaintiff appeared *pro*

*se* and testified before ALJ Joani Sedaca.  *Id.* at 35-63.  On August 18, 2014, the ALJ issued a

decision finding that Plaintiff was not disabled.  *Id.* at 19-34.  On September 24, 2015, the ALJ's

decision became final when the Appeals Council denied Plaintiff's request for review.  *Id.* at 1-7.

On November 23, 2015, Plaintiff filed the instant appeal seeking judicial review of the

Commissioner's denial of SSI benefits pursuant to 42 U.S.C. § 405(g).  *See* Compl., Dkt. Entry

No. 1.  On April 22, 2016, Plaintiff moved pursuant to Fed. R. Civ. P. 12(c) for judgment on the

pleadings, requesting that the case be remanded for a new hearing and additional development of

the record.  *See* Mem. of Law in Supp. of Pltf.'s Mot. for J. on the Pleadings ("Pltf.'s Mem."), Dkt.

Entry No. 10.  On July 22, 2016, the Commissioner of Social Security ("Defendant" or

"Commissioner") opposed Plaintiff's motion and cross-moved pursuant to Fed. R. Civ. P. 12(c)

for judgment on the pleadings requesting dismissal of this appeal.  *See* Mem. of Law in Supp. of

Def.'s Cross-Mot. for J. on the Pleadings ("Def.'s Mem."), Dkt. Entry No. 14. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted; the Commissioner's motion for judgment on the pleadings is denied; and the matter is remanded for further administrative proceedings.

## BACKGROUND[1]

### A.     Non-Medical and Self-Reported Evidence

Plaintiff was born in 1975 and attended school through the eleventh grade. R. at 40, 42-43. Plaintiff was last employed part-time as a bookkeeper/secretary in 2009 and 2010. *Id.* at 43, 45, 174.

In a function report filed January 8, 2013, Plaintiff reported that she lived with her family in an apartment. *Id.* at 136, 144. Plaintiff did not report any problems with caring for herself or others in the home. *Id.* at 137. She reported that she "cant [*sic*] sleep well, I forget a lot [*sic*]," and she did not "like being left alone." *Id.* Plaintiff reported preparing food daily, cleaning the apartment, and going outside the home twice daily. *Id.* at 138-39. She reported that she had a driver's license and drove at the time; she also walked or rode in the car to get around. *Id.* at 139-40. Plaintiff reported that she shopped for groceries once per week and independently handled her finances. *Id.* at 140. Plaintiff reported no physical limitations, but she indicated that she had problems paying attention. In her words, she "lose[s] focus" and "get[s] panic attack[s]." *Id.* at 141-43. She also reported having trouble remembering things and that she "get[s] stress[ed]," though she reported no issues with following written or oral instructions or dealing with persons in authority positions. *Id.* at 143-44.

---

[1]     Having thoroughly and carefully reviewed the administrative record, the Court finds the Commissioner's factual background accurately represents the relevant portions of the record. Accordingly, the background information that follows is taken substantially from the "Administrative Record" section of the Defendant's cross-motion.

On November 25, 2013, Plaintiff submitted forms titled "Claimant's Recent Medical Treatment" and "Claimant's Medications." *Id.* at 175-76. Plaintiff wrote, "[b]ereavement continues due to loss of mother, father, cousin & sister in-law over past six months. In addition to anxiety & insomnia that persists due to recent losses. Recommended I attend continued therapy at this time." *Id.* at 175. Plaintiff listed her medications as Buspirone (for anxiety), Trazodone (Desyrel) (for depression), and Zolpidem (for insomnia). *Id.* at 176.

**B.     Medical Evidence**

Prior to Plaintiff's protective filing on October 19, 2012, Plaintiff was evaluated by Jodie Cohen, LMSW, and Lev Poberesky, M.D., both of Interborough Developmental & Consultation Center ("IDCC"). Ms. Cohen completed an intake assessment of Plaintiff on April 18, 2012, where Plaintiff presented with "anxiety, weight loss, and sleep deprivation due to [her] husband cheating on her." *Id.* at 212. Ms. Cohen reported that Plaintiff was a stay at home mother of six children between the ages of eleven months and fourteen years. *Id.* at 214. Plaintiff's problem developed roughly two years prior to the evaluation when her husband was imprisoned for nine months. *Id.* Plaintiff previously saw a psychiatrist three times when her husband was convicted, but was not prescribed any mediations at that time. *Id.* at 213.

At their initial meeting, Ms. Cohen documented that Plaintiff had a normal affect, a mildly depressed mood, and was severely anxious. *Id.* at 220. Plaintiff had normal speech and thought processes, average intellectual functioning, and no suicidal or homicidal ideation. *Id.* at 220-21. Ms. Cohen's assessment was that Plaintiff suffered from adjustment disorder with anxiety, and recommended weekly psychotherapy.[2] *Id.* at 210, 217. Plaintiff was not taking any medications at the time of Ms. Cohen's evaluation. *Id.* at 213.

---

[2]     An April 10, 2013 IDCC letter from Ms. Cohen notes that Plaintiff, in fact was, a weekly patient of Ms. Cohen's and a monthly patient of Dr. Poberesky. R. at 169.

Dr. Poberesky first evaluated Plaintiff on August 1, 2012. *Id.* at 206-09. Plaintiff complained of "increased irritability and anxiety" with insomnia and a depressed mood. *Id.* at 206. Plaintiff reported being depressed since approximately one year before when her husband had been jailed, and she also reported having "significant marital problems" since her husband's release. *Id.* She was taking Xanax. *Id.* at 207. Plaintiff was cooperative and alert, denied suicidal or homicidal thoughts, and had good intellectual functioning, judgment, insight, and impulse control. *Id.* at 208. Her concentration and memory were fair. *Id.* Dr. Poberesky noted that Plaintiff had a depressed and anxious mood, with sleep disturbance, appetite disturbance, and hopelessness. *Id.* He diagnosed Plaintiff with adjustment disorder with anxiety and depressed mood and prescribed psychotherapy and medication (Hydroxyine and Zolpidem). *Id.* at 209.

Ms. Cohen established a treatment plan on September 5, 2012 to assist Plaintiff in coping with anxiety, which was approved by Dr. Mikhail Pilman on September 6, 2012. *Id.* at 234-39.

Plaintiff next saw Dr. Poberesky on October 10, 2012 for medication management. *Id.* at 249. Dr. Poberesky reported that Plaintiff's mood was euthymic (normal, non-depressed) and her affect was appropriate and full range, though Plaintiff reported still feeling anxious and having problems falling and staying asleep. *Id.* Plaintiff reported no side effects from her medications. *Id.* She had logical thoughts, good insight, and good judgment, with no delusions, hallucinations, or suicidal or homicidal ideation. *Id.* Dr. Poberesky prescribed Buspirone and Trazodone. *Id.*

Dr. Poberesky next saw Plaintiff on November 7, 2012. *Id.* at 248. Her mood, thoughts, and judgment were unchanged, and she reported that she "feels better" taking her prescribed medication. *Id.* She was not experiencing any side effects, and Dr. Poberesky renewed her prescriptions without changes. *Id.*

On November 26, 2012, Ms. Cohen noted that Plaintiff had been "more effectively managing anxiety" and that she had "made significant progress," but her husband had returned to the home and she needed assistance in coping with that change. *Id.* at 225-27.

Dr. Poberesky again saw Plaintiff for medication management on December 12, 2012 and January 9, 2013. *Id.* at 246-47. At both appointments, Dr. Poberesky's assessment of Plaintiff's mood, thoughts, and judgment remained the same as previous visits. *Id.* Dr. Poberesky again renewed Plaintiff's prescriptions without changes. *Id.*

On January 17, 2013, Johanina McCormick, Ph.D., conducted a consultative psychiatric examination. *Id.* at 250-53. Plaintiff rode the train to her appointment, and told Dr. McCormick she does not work because of panic attacks. *Id.* at 250. Plaintiff reported receiving outpatient treatment for the past year and taking Buspirone twice a day. *Id.* She reported waking twice per night because of restlessness, as well as dysphoric moods related to anxiety symptoms. *Id.* Dr. McCormick noted that Plaintiff was cooperative and her manner of relating, social skills, and presentation was adequate. *Id.* at 251. Plaintiff had no evidence of hallucinations, delusions or paranoia. *Id.* Dr. Poberesky found that her attention and concentration was mildly impaired due to possible limited intellectual functioning, and her recent and remote memory was mildly impaired due to emotional distress secondary to anxiety and possible limited intellectual functioning. *Id.* at 251-52. She noted that Plaintiff dresses, bathes, and grooms herself, cooks, does the laundry, shops, manages her own money, has positive social relationships with family, and enjoys watching television. *Id.* at 252. Dr. McCormick found that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, and maintain attention and concentration. *Id.* Dr. McCormick also found that Plaintiff was not able to perform complex tasks or appropriately deal with stress, and Plaintiff's condition significantly interfered

with her ability to function on a daily basis. *Id.* Dr. McCormick noted that Plaintiff gets along with others, and can learn new tasks with help and make appropriate decisions, but she needs supervision. *Id.* Dr. McCormick diagnosed Plaintiff with depressive disorder NOS (not otherwise specific) and panic attacks without agoraphobia. *Id.* at 252-53.

On or about February 5, 2013, Nissan Shliselberg, M.D., a state agency psychiatric consultant, reviewed the evidence in Plaintiff's file and concluded that Plaintiff's anxiety disorder did not meet or equal Section 12.06 (anxiety related disorders) of the Listing of Impairments. *Id.* at 68, 73. Dr. Shliselberg found that Plaintiff had a mild restriction of activities of daily living, and mild difficulties in maintaining concentration, persistence, or pace, and no difficulties maintaining social functioning or episodes of decompensation. *Id.* at 68. Dr. Shliselberg's residual functional capacity ("RFC") assessment found that Plaintiff was not significantly limited in sustained concentration and persistence limitations, other than being moderately limited in her ability to carry out detailed instructions. *Id.* at 70. Plaintiff was not limited significantly in her ability to understand or memory, other than being moderately limited in her ability to understand and remember detailed instructions. *Id.* at 69-70. Plaintiff also was not limited significantly in social interactions, other than being moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. *Id.* at 70-71. Plaintiff was not limited significantly in her adaptations, other than being moderately limited in her ability to travel to unfamiliar places using public transportation and her ability to respond to changes in the work setting. *Id.* at 71. Dr. Schliselberg concluded that Plaintiff was "able to remember, understand and carry out tasks." *Id.*

Plaintiff again saw Ms. Cohen on February 25, 2013. *Id.* at 314-20. Plaintiff reported that her husband had returned to the home after a hospitalization for a possible tumor and that her father

was scheduled to undergo surgery. *Id.* at 316. Ms. Cohen noted that Plaintiff "continue[d] to make progress" and that Plaintiff "continue[d] to struggle with ongoing mental & family dynamics." *Id.*

At her March 5, 2013 medication management appointment with Dr. Poberesky, Dr. Poberesky's impression of Plaintiff remained the same: Plaintiff was cooperative and made good eye contact, her thought processes were logical and coherent, she had no delusions, hallucinations, or suicidal ideations, and her judgment and insight were intact. *Id.* at 288-89. Plaintiff reported feeling "more anxious" and having difficulty falling asleep. *Id.* at 288. Dr. Poberesky prescribed Buspirone and Trazodone. *Id.*

Plaintiff again saw Dr. Poberesky on March 28, 2013. *Id.* at 322. She reported having "a lot of stress" with her mother being hospitalized. *Id.* She was anxious, but otherwise she had normal speech, was cooperative and made good eye contact, and her insight was intact. *Id.* Dr. Poberesky noted no sign of delusions, hallucinations, or suicidal ideations. *Id.* He prescribed Buspirone, Trazodone, and Zolpidem. *Id.*

At their next appointment on April 25, 2013, Plaintiff informed Dr. Poberesky that she "fe[lt] better" and "sle[pt] better" taking her prescribed medication. *Id.* at 323-24. Dr. Poberesky renewed her medications, and noted that her mood was euthymic, her thought processes were logical and coherent, she had no delusions, hallucinations, or suicidal ideations, her insight and judgment were intact, and her memory was within normal limits. *Id.* at 324.

Plaintiff missed her May 20, 2013 medication appointment with Dr. Poberesky due to her mother's death. *Id.* at 325-26. Ms. Cohen's May 29, 2013 notes indicated that Plaintiff needed continued treatment for anxiety symptoms and adjustment to the loss of her mother and struggles related to her father's medical condition. *Id.* at 285.

On June 28, 2013, Plaintiff resumed her appointments with Dr. Poberesky. *Id.* at 294-95. She reported no side effects from her prescribed medications, and her mental status examination findings were unchanged from April 25, 2013. *Id.* at 295. Dr. Poberesky renewed Plaintiff's medications. Similarly, at Plaintiff's July 16, 2013 appointment with Dr. Poberesky, Plaintiff's mental status was unchanged, and Dr. Poberesky again renewed her mediations. *Id.* at 297.

Ms. Cohen's August 21, 2013 treatment plan indicates that Plaintiff continued to experience anxiety and insomnia due to her mother's death and her father's illness. *Id.* at 276. Ms. Cohen diagnosed Plaintiff with adjustment disorder with anxiety and depressed mood (chronic). *Id.* at 272.

Dr. Poberesky again saw Plaintiff on August 26, 2013. *Id.* at 306-07. Plaintiff had no complaints or evidence of side effects, and her mental status examination findings were the same as her previous appointment. *Id.* at 306. Dr. Poberesky again renewed her prescriptions. *Id.*

On October 1, 2013, Plaintiff saw Dr. Poberesky for her monthly medication appointment. *Id.* at 304. Plaintiff reported that her father had died, but she was taking her medications as prescribed without side effects, and her mental status examination findings remained unchanged. *Id.* Dr. Poberesky renewed her medications. *Id.*

On November 20, 2013, Ms. Cohen noted in her treatment plan that Plaintiff continued to experience anxiety and insomnia due to the recent loss of her parents. *Id.* at 343-46. She also noted that Plaintiff's sister in-law recently had died suddenly. *Id.* at 345. Plaintiff had "formulated effective coping skills, however [*sic*] implementation remain[ed] difficult due to ongoing challenges and losses." *Id.*

Dr. Poberesky renewed Plaintiff's medications again on December 17, 2013 and February 11, 2014. *Id.* at 357-58.

## C.     Testimonial Evidence

Plaintiff appeared before the ALJ on December 4, 2013. *Id.* at 35-63. The ALJ advised Plaintiff that she had the right to an attorney, and that payment only would be due if Plaintiff was awarded benefits, but Plaintiff declined to have an attorney, saying "[e]very dollar right now will count." *Id.* at 37-38.

Plaintiff testified that she stopped working because she suffers from panic attacks. *Id.* at 41, 47-48. In her own words, she "cannot be alone," "all [she] want[s] to do is cry," she is "very depressed," and "if [she is] in a room too long, [she] feel[s] like the walls are closing up." *Id.* at 40. The ALJ inquired as to whether Plaintiff's issues were "all psychological, emotional," and whether she had any physical issues that kept her from working, and Plaintiff confirmed she had no physical disabilities. *Id.* at 53. Plaintiff testified that she was seeing a therapist once per week and a psychiatrist once per month. *Id.* at 48. Plaintiff also testified that she suffered from insomnia. *Id.* at 55. She testified that she was prescribed and taking Zolpidem, Buspirone, and Desyrel. *Id.* at 55-56.

According to Plaintiff, her first panic attack was in 2009. *Id.* at 50. She testified initially that she did not know the origin of the panic attacks, but that taking medication made her "feel a lot better." *Id.* She later testified that her husband was jailed around the same time as her first panic attacks. *Id.* at 54.

Plaintiff testified that she lives in an apartment with her husband and six children and she had no problems with personal care. *Id.* at 42, 45. Her oldest daughter assisted with the household chores and cooking; her husband sent the laundry out for cleaning, and she shopped when her husband would drive her to the store. *Id.* at 51-52. She testified that she had not driven in approximately eight or nine months because she "get[s] very scared." *Id.* at 46. She also testified

that she had not taken public transportation in approximately three years for the same reason. *Id.* at 60.[3]

### D. Vocational Evidence

The ALJ solicited interrogatory responses from vocational expert ("VE") Edna F. Clark. *Id.* at 179. The VE noted that Plaintiff had a "spotty work history and only worked on a part-time basis," but concluded that a hypothetical individual of Plaintiff's age, education, work experience, and functional limitations could perform the following unskilled occupations existing in the national economy: cleaner II (Dictionary of Occupational Titles ("DOT") 919.687-014 (medium unskilled SVP 1), with 30,000 jobs nationally); fusing machine feeder (DOT 583.686-014 (light unskilled SVP 1), with 6,000 jobs nationally); or buckle-wire inserter (DOT 734.687-034 (sedentary unskilled SVP 1), with 6,000 jobs nationally). *Id.* at 187-88.

### E. Evidence Submitted to the Appeals Council After the ALJ's Decision

The only additional evidence submitted to the Appeals Council was: (1) a one-page letter dated August 17, 2015, and (2) a "mental impairment questionnaire" dated October 2, 2014, both prepared by Eugene Khotimsky, M.D., a clinical psychiatrist who has a treating relationship with Plaintiff. *Id.* at 201-05, 360-65.

## DISCUSSION

### A. Standard of Review

Unsuccessful disability benefits claimants may seek judicial review of the Commissioner's denial of their benefits in the district court "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). In reviewing the final determination of the Commissioner, the district court must

---

[3] As noted above, Plaintiff subsequently traveled by train approximately one month after the hearing for an evaluation by Dr. McCormick. R. at 250.

determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (internal citations and quotation marks omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran*, 569 F.3d at 112 (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 1990)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remanding to the Commissioner is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp.2d 559, 568 (E.D.N.Y. 2004). Remand is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F. 3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). "[I]t is the rule in [the Second] [C]ircuit that the [social security] ALJ, unlike a judge in a trial, must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009) (quoting *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999)).

## B.     Disability Claims

A claimant must be disabled to receive disability benefits under the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant is disabled if she establishes an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can . . . be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof in establishing that she is disabled. Disability must be established through medical and other evidence that the Commissioner may require, presented as "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, . . . show[ing] the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities" that could reasonably produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A).

In determining whether a claimant is disabled under the Act, the ALJ must perform a five-step inquiry. 20 C.F.R. § 404.1520(a)(4). At the first step, the claimant is not disabled if she is performing "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the ALJ considers, without respect to age, education, or work experience, whether the claimant's impairment is "severe." 20 C.F.R. § 404.1520(a)(4)(i). Impairments are severe when they significantly limit a claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. § 404.1520(c). At the third step, the ALJ will determine whether the impairment or combination of impairments meets or medically equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listings"). *See* 20 C.F.R. § 404.1520(d). If no impairment exists, the ALJ then makes a finding about the claimant's RFC. 20 C.F.R. § 404.1520(e). At step four, claimant is not disabled if he or she can perform past relevant work, and at step five, the ALJ determines whether claimant could perform other work existing in significant numbers in the national economy, considering claimant's age, education, and prior work experience. 20 C.F.R. §§ 404.1520(e), (f).

**C.** **The Decision**

On August 18, 2014, the ALJ issued a decision denying Plaintiff's claims. R. at 19-34. The ALJ followed the five-step process in determining that Plaintiff had the RFC to perform a full range of work at all exertional levels with certain non-exertional limitations. *Id.* at 26. At the first step, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since October 19, 2012, the protective filing date of her application. *Id.* at 24. At the second step, the ALJ found the following severe impairments: adjustment disorder with anxiety and depressed mood. *Id.* At the third step, the ALJ determined that Plaintiff's impairments did not meet or medically exceed the severity of one of the impairments in the Listings. *Id.* at 25-26.

At the fourth step, the ALJ determined that Plaintiff could perform a full range of work at all exertional levels, but with the following non-exertional limitations: "[Plaintiff] is limited to simple, routine and repetitive tasks, with only occasional decision-making required. Further, she can tolerate only occasional changes in the work setting, including work procedures and work tools." *Id.* at 26. The ALJ's finding was based on consideration of the entire record and "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* The ALJ found that Plaintiff's daily activities were restricted to some extent, but "there is . . . no indication that she has experienced a complete loss of independence." *Id.* at 29.

The ALJ found that "given the extent of [Plaintiff's] daily activities, the efficacy of her medication regimen, and the routine nature of [Plaintiff's] treatment," it was not possible to credit Plaintiff's testimony. *Id.* at 29. The ALJ reached this conclusion based on the fact that Plaintiff remains in the home and cares for a toddler during the day, takes her toddler for walks, and occasionally runs errands. *Id.* The ALJ also relied on the fact that Plaintiff described her

medications as effective at controlling her symptoms and that her treatment had been strictly "routine" outpatient therapy with no record of hospitalizations or emergency room visits. *Id.*

The ALJ took exception to portions of the opinion of Dr. McCormick, the consultative psychiatrist, concerning restrictions on Plaintiff's ability to deal with stress and the impact her symptoms had on her ability to function on a daily basis. *Id.* at 29-30. The ALJ found that Dr. McCormick's opinions as to these areas were "simply out of proportion to the [Plaintiff's] statements during the examination, and Dr. McCormick's own mental status findings." *Id.* As the ALJ explained, "as a one-time examiner, whose diagnosis of 'panic attacks' is not supported by the [Plaintiff's] own treating source progress notes . . . , Dr. McCormick can be given only little weight generally in this analysis." *Id.* at 30. Plaintiff had no relevant past work to return to. The ALJ solicited interrogatory responses from a VE regarding what jobs exist in the national economy for an individual with Plaintiff's RFC. *Id.* at 31. Relying on the VE's responses, the ALJ found three jobs suitable for an individual with Plaintiff's characteristics: cleaner II, fusing machine feeder, and buckle-wire inserter. *Id.* at 31.

At the fifth step, in consideration of Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff was capable of making a successful adjustment to other work existing in significant numbers in the national economy. *Id.* at 31.

## D.     Analysis

Plaintiff contends that the ALJ failed to properly: (i) develop the record for the *pro se* Plaintiff, (ii) weigh the available medical evidence, and (iii) evaluate Plaintiff's credibility. *See generally* Pltf.'s Mem. Plaintiff further contends that remand is warranted based on new evidence presented to the Appeals Council that was not considered. *Id.* The Commissioner cross-moves

for judgment on the pleadings arguing that Plaintiff's contentions are meritless, and seeks affirmance of the ALJ's decision and dismissal of the instant appeal.

Upon review of the record, the Court finds that remand is warranted.

### i. Unchallenged findings

As an initial matter, the ALJ's findings at steps one and two are not challenged. *See Id.*; Def.'s Mem. Upon review of the record, the Court concludes that the ALJ's findings as to steps one and two are supported by substantial evidence.

### ii. The ALJ Failed to Request an Opinion from Plaintiff's Treating Physician

Plaintiff argues that the ALJ erred in not fully developing the record by "fail[ing] [to] request opinions from the regular treating physician." Pltf.'s Mem. at 7-11. The Commissioner concedes that no such opinion was requested, and, instead, contends that the ALJ did not need the opinion of a treating physician since there were no obvious gaps in an otherwise "complete" medical history. Def.'s Mem. at 17-19. While the ALJ made several attempts to obtain medical records, no request was made for an opinion from the treating physician, which was legal error.

The ALJ has "an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d. Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). "When a claimant properly waives h[er] right to counsel and proceeds *pro se*, the ALJ's duties are heightened." *Moran*, 569 F.3d at 113. With a *pro se* Plaintiff, "the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Echevarria*, 685 F.2d at 755. This includes "seek[ing] additional information from [the treating physician] *sua sponte*," *Shaal v. Apfel*, 134 F.3d 496, 505

(2d Cir. 1998), and making "every reasonable effort" to get the required medical documentation, 20 C.F.R. § 416.912(b)(1).[4]

The record indicates that the ALJ sought additional medical records from IDCC. The ALJ possessed IDCC records covering the period from April 18, 2012 to January 9, 2013 obtained from the state agency responsible for the initial disability determination. R. at 206-49, 372-76. On September 30, 2013, the ALJ sent a letter request to IDCC for "[a]ll medical records and treatment notes from 1/10/2013 to present." *Id.* at 171-73. IDCC subsequently sent responsive records covering the requested period. *See Id.* at 267-328. At the hearing, the ALJ confirmed that Plaintiff only received treatment at IDCC, and that she only saw a therapist (Ms. Cohen) and a psychiatrist (Dr. Poberesky). *Id.* at 49, 59.[5] The ALJ informed Plaintiff that she would "write to them for all the records" and she would ask Plaintiff to "sign a medical release, so we can get up to date records from them." *Id.* Following the hearing, the ALJ issued a subpoena to IDCC for

> ALL of your medical records pertaining to [Plaintiff], a mental RFC, your chart and handwritten treatment notes, together with all laboratory tests and studies, and other documents such as hospital records. SPECIFICALLY ***Please provide ALL TREATMENT RECORDS from 01/2013 to the present.

*Id.* at 329 (capitalization in original). There is no indication that any additional efforts were made to obtain additional records or opinions of the treating physician subsequent to issuing the subpoena. The ALJ acknowledged in its decision that "no treating source has offered an opinion as to the nature and severity of the claimant's opinions." *Id.* at 29.

ALJs have a general obligation to obtain the opinion of treating physicians, not just their reports and underlying data. *See Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) ("It

---

[4]      "Every reasonable effort" is defined as making an initial request, followed by a follow-up request between ten and twenty days after the initial request. 20 C.F.R. § 416.912(b)(1)(i).

[5]      The Court notes that while there was some confusion over whether Plaintiff was being seen be a Dr. "John Boight," R. at 49, records from the correct treating physician were submitted to the ALJ.

is the *opinion* of the treating physician that is to be sought; it is [her] *opinion* as to the existence and severity of a disability that is to be given deference.") (emphasis original); *See also Hankerson v. Harris*, 636 F.2d 893, 896 (2d Cir. 1980) (holding that it was error to not inform plaintiff that he should obtain a more detailed statement from his treating physician). Here, both the ALJ's letter request and subpoena requested "[a]ll . . . medical records." R. at 171-73, 329. However, neither request included a specific request for the opinion of the treating physician as to the "existence, the nature, and the severity of the claimed disability." *Id.*; *Peed*, 778 F. Supp. at 1246.

As the Commissioner points out, failing to obtain the opinion of a treating physician is not always fatal. Courts have held that, in some instances where the medical record is sufficiently developed without a treating physician's opinion, the ALJ nonetheless can make an informed decision as to the claimant's RFC. *See, e.g.*, *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 29, 34 (2d Cir. 2013) ("[R]emand is not always required when . . . the record contains sufficient evidence from which an ALJ can assess the petitioner's [RFC].")"; *Blair v. Astrue*, 2013 WL 782619 at *8 (E.D.N.Y. Mar. 1, 2013) ("[W]here the record contains Plaintiff's comprehensive medical records and consulting medical experts provided opinions consistent with the ALJ's findings, the ALJ was not required to seek additional materials from the Plaintiff's treating physicians.") (citations omitted).

While the Court recognizes that the ALJ made two separate requests for medical records, the ALJ erred in failing to request an opinion from the treating physician, especially since the record does not contain any opinion from a treating physician. *See Peed*, 778 F. Supp. at 1246. The Commissioner points to *Tankisi* and *Blair* in support of its argument that the record was sufficiently developed so as to not require a formal opinion from Dr. Poberesky. Def.'s Mem. at 19. In *Tankisi*, unlike the present case, the medical record contained an assessment from the

treating physician as to Plaintiff's limitations. Thus, the lack of a formal opinion from the treating physician was excusable. *See Tankisi*, 521 Fed. Appx. at 34 (discounting the absence of a "formal opinion" from the treating physicians since the record included an "assessment of Tankisi's limitations from a treating physician"). The record here only contains a series of two-page, non-narrative assessments from Dr. Poberesky that do not address Plaintiff's RFC. *See, e.g.*, R. at 248-49, 288-99. As *Peed* makes clear, these are not a substitute for the treating physician's opinion. *Peed*, 778 F. Supp. at 1246 ("[I]t is not sufficient for the ALJ simply to secure raw data from the treating physician.").

Similarly, in *Blair*, the record contained additional assessments from multiple treating physicians from which the ALJ could base its opinion. *Blair*, 2013 WL 782619, at *8 (noting that there the ALJ reviewed records from other "treating sources" including "[a]nother treating physician"). The ALJ in *Blair* had the benefit of reviewing records from multiple treating physicians, including from two hospital visits and at least one treating physician with specific diagnoses. *Id.* Here, the ALJ confirmed that Dr. Poberesky was the only physician treating Plaintiff (R. at 49, 59), and his assessments contain no description of the limitations imposed by Plaintiff's condition, and, instead, include only a series of circled selections from multiple-choice lists of observations (*see, e.g.*, *Id.* at 248-49, 288-99).

On remand, the ALJ must develop the record as to the nearly two years of treatment Plaintiff received from Dr. Poberesky and seek an opinion from him concerning Plaintiff's alleged impairments and remaining abilities. Should the ALJ obtain these opinions, the ALJ then must obtain a revised opinion from Dr. McCormick that incorporates the additional record evidence. After that, the ALJ must reevaluate the weight assigned to the opinions of Dr. Poberesky, Ms. Cohen, and Dr. McCormick using the factors outlined in 20 C.F.R. § 416.927(c)(1)-(6). Should

an opinion from the treating physician be unavailable, the ALJ shall describe what steps were taken to secure the opinion and why it remains unavailable.

### iii.     The ALJ Improperly Weighed Dr. McCormick's Opinions

Plaintiff also faults the ALJ with selectively crediting the opinions of Dr. McCormick, the examining psychologist.  Pltf.'s Mem. at 10-11.  According to the decision, the ALJ afforded "[g]reat weight" to Dr. McCormick's conclusions as to Plaintiff's ability to "follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, and get along with others" based on the "mental status testing" and Plaintiff's own account to Dr. McCormick.  R. at 29.  However, the ALJ afforded less weight to Dr. McCormick's conclusions that Plaintiff "could not appropriately deal with stress, and that the [Plaintiff's] psychiatric problems significantly interfered with her ability to function on a daily basis," finding that these conclusions were "out of proportion to the [Plaintiff's] statements during the examination, and Dr. McCormick's own mental status findings."  *Id.* at 29-30.  The ALJ further noted that "as a one-time examiner . . . Dr. McCormick can be given only little weight generally in this analysis."  *Id.* at 30.

As a general matter, selective use of the record by the ALJ is disfavored.  "'It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports [her] determination, without affording consideration to the evidence supporting plaintiff's claims.'"  *Credle v. Astrue*, 2012 WL 4174889, at *17 (E.D.N.Y. Sept. 19, 2012) (citing *Stewart v. Astrue*, 2012 WL 314867, at *8 (E.D.N.Y. Feb. 1, 2012)); *but see Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (noting that "it was within the province of the ALJ" to only credit portions of a treating physician's opinion).

The selectively used portion of the record in this case comes from the examining psychologist.  R. at 250-53.  In contrast to treating physicians, whose opinions are binding on the

ALJ unless contradicted by substantial evidence, *Peed*, 778 F. Supp. at 1246 (citing *Jones v. Sullivan*, 949 F.3d 43, 47 (2d Cir. 1988)), "the opinions of 'examining physicians' are entitled to little weight," *Id.* (citing *Bluvand v. Heckler*, 730 F.2d 886, 893-94 (2d Cir. 1984)). The reasons for this distinction are borne out by the factors enumerated in 20 C.F.R. § 416.927(c). *See Straughter v. Comm'r of Soc. Sec.*, 2015 WL 6115648, at *16 (S.D.N.Y. Oct. 16, 2015) ("These factors are not empty phrases to mention in passing, but rather a meaningful analytical tool to show why the controlling weight presumptively assigned to the treating physician's findings should be cast aside in favor of a one-time examiner's opinion."). A treating physician necessarily is more informed about a plaintiff's condition and limitations than a consulting physician, and, thus, ordinarily afforded more weight.

While the ALJ noted in her decision that "as a one-time examiner . . . Dr. McCormick can be given only little weight generally in this analysis," R. at 30, this appears to be a superficial recitation. As noted above, and as set forth in the ALJ's decision, there was no other medical opinion in the record, and no opinion from a treating physician. *Id.* at 29. As such, the ALJ, by her own admission, and in the absence of any other medical opinion which she could weigh, appears to have assigned "[g]reat weight" to at least portions of Dr. McCormick's opinion, specifically noting that her "residual capacity function assessment is supported by the elements of the [Plaintiff's] testimony[] and . . . the opinion of Dr. McCormick." *Id.* at 29-30. This was error.

Accordingly, on remand, once the ALJ obtains the opinion of the treating physician, the ALJ is instructed to reevaluate the weight assigned to Dr. McCormick's opinion relative to the opinion of the treating physician and the record as a whole.

### iv.  Presentation of New Evidence

Plaintiff also argues that remand is warranted based on the presentation of new evidence to the Appeals Council.  Pltf.'s Mem. At 11-13.  The new evidence includes: (1) a letter dated August 17, 2015 from Plaintiff's treating physician Eugene Khotimsky, M.D., and (2) a "mental impairment questionnaire" completed by Dr. Khotimsky on October 2, 2014, detailing treatment between February 26, 2014 and September 29, 2014.  R. at 360-65.

Remand for consideration of new evidence is appropriate if:

> (1) the proffered evidence is new and not merely cumulative of what is already in the record; (2) the proffered evidence is material, meaning that it is . . . relevant to the [Plaintiff's] condition during the time period for which benefits were denied . . . , probative . . . , and reasonably likely to have influenced the Commissioner to decide [the] application differently; and (3) good cause exists for failure to present the evidence earlier.

*Mulrain v. Comm'r of Soc. Sec.*, 431 Fed. Appx. 38, 39 (2d Cir. 2011); Pltf.'s Mem. at 11 (citing *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996)); *see also Woodson v. Berryhill*, 2017 WL 1214472, at *10 (E.D.N.Y. Mar. 31, 2017) (quoting *Felix v. Astrue*, 2012 WL 3043203, at *12 (E.D.N.Y. July 24, 2012)) ("[N]ew evidence is only material if it is relevant to the . . . condition during the period for which benefits were denied, spanning from the alleged onset date through the ALJ's decision.") (alteration in original); *c.f. Pollard v. Halter*, 377 F.3d 183, 193-94 (2d Cir. 2004) (categorical exclusion of new evidence that post-dated ALJ's decision inappropriate where exclusion was based on the new evidence not explicitly referencing the relevant time period). "'Good cause' for failing to present evidence in a prior proceeding exists where . . . the evidence surfaces after the Secretary's final decision and the claimant could not have obtained the evidence during the pendency of that proceeding." *Lisa v. Sec'y of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991) (citing *Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir. 1985)).

There is no question that the evidence is new as it is proffered by a physician who does not appear to have been known to the ALJ and whose treatment records were not before the ALJ. The evidence also does not appear to be cumulative, since it represents the only opinion in the record from a treating physician. The letter relates to care provided between February 26, 2014 and August 17, 2015 (the date of the letter), and the mental impairment questionnaire, though dated October 2, 2014, relates to care provided between February 26, 2014 and September 29, 2014. R. at 360-65. As such, both documents cover a period between the hearing (December 4, 2013) and the ALJ's decision (August 18, 2014). Therefore, both documents meet the materiality requirement. *Woodson*, 2017 WL 1214472, at \*10; R. at 360-65. The Appeals Council, in declining to consider the additional documents, appears to have reviewed only the dates of the documents, both of which are after the ALJ's decision. R. at 2. The Appeals Council provides no other basis for not considering the new evidence. *Id.* ("We also looked at information from Eugene Kho[t]imsky, M.D., dated August 17, 2015. The [ALJ] decided your case through August 18, 2014. This new information is about a later time.").

Even though the new evidence is material in that it relates to the relevant time period, the Court still must assess whether the new evidence is "probative" and "likely to have influenced the Commissioner to decide [the] application differently." *Mulrain*, 431 Fed. Appx. at 39. Dr. Khotimsky's August 17, 2015 one-page letter indicated that Plaintiff "has been suffering from" major depressive disorder, generalized anxiety disorder and insomnia. R. at 365. The letter also listed medications prescribed for depression, anxiety, and mood stabilization. *Id.* Though Dr. Khotimsky indicated that he "[could not] provide . . . medical records because the [Plaintiff's] chart was damaged and destroyed in a recent flooding in the office," based on treating Plaintiff for

more than one and one-half years, Dr. Khotimsky concluded that "[Plaintiff] is unable to perform work due to her chronic mental illness." *Id.*

The mental impairment questionnaire Dr. Khotimsky submitted is five pages of mostly non-narrative check-boxes and yes or no questions. *Id.* at 360-64. The questionnaire indicates that it its findings are "based on [Dr. Khotimsky's] office-base[d] clinical observations of the patient & her psych[iatric] history of treatment in [the IDCC] clinic from 4/18/12 – 2/11/14." *Id.* at 362. While the Commissioner points out a number of new findings not raised at the hearing or in IDCC's records, it is not inconceivable that Plaintiff's condition could have worsened following the hearing. Moreover, Dr. Khotimsky made a number of observations that were consistent with the observations of Dr. Poberesky, Plaintiff's treating physician, including the diagnoses of anxiety and insomnia. *Id.* at 360-64.

First, given that the record before the ALJ contained no treating physician's opinion, R. at 29, it is difficult to see anything more probative of Plaintiff's limitations than the opinions of Dr. Khotimsky, who treated the Plaintiff monthly for nearly six months during the relevant time period, from February 26, 2014 until after the date of the hearing. *Id.* at 360-65. Second, while the additional evidence certainly is not voluminous, the Court finds that, in light of the absence of any treating physician's opinion in the record, the opinion of Dr. Khotimsky very well could have influenced the Commissioner to decide the application differently. *See Skuza v. Astrue*, 2010 WL 184434, at *2 (W.D.N.Y. Jan. 15, 2010) (citing *Burger v. Barnhart*, 476 F. Supp.2d 248, 257 (W.D.N.Y. 2007), *vacated and remanded on other grounds*, 282 Fed. Appx. 883 (2d Cir. 2008)) ("RFC evaluations from Plaintiff's treating physician should be considered as new evidence."). Furthermore, the ALJ could have (and had an affirmative duty to have) asked Dr. Khotimsky to

supplement the record. *See Shaal*, 134 F.3d at 505 (the ALJ has an affirmative duty to seek additional records "*sua sponte*").

Accordingly, the Court finds that the Appeals Council should have considered the new evidence. On remand, the ALJ is to consider the evidence submitted by Dr. Khotimsky, as well as make a request for supplemental opinions from him, as necessary, to inform her decision.

### v.    *Remaining Arguments*

Plaintiff's remaining arguments suggest that the ALJ erred in assessing Plaintiff's credibility. *See* Pltf.'s Mem at 13-18. Because the Court has already determined that remand is appropriate to more fully develop the record upon which the RFC assessments were based, it need not address the ALJ's findings regarding Plaintiff's credibility. *See Callahan*, 168 F.3d at 82 n.7 ("Because we have concluded that the ALJ was incorrect in her assessment of the medical evidence, we cannot accept her conclusion regarding . . . credibility."); *Jeanniton v. Berryhill*, 2017 WL 1214480, at *12 (E.D.N.Y. Mar. 31, 2017); *Rivera v. Comm'r of Soc. Sec.*, 728 F. Supp.2d 297, 331 (S.D.N.Y. 2010) ("Because I find legal error requiring remand, I need not consider whether the ALJ's decision was otherwise supported by substantial evidence.") (internal citations omitted). Nonetheless, the ALJ shall consider Plaintiff's arguments on remand.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings is granted; the Commissioner's cross-motion for judgment on the pleadings is denied; and this matter is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order. If Plaintiff's benefits remain denied, the Commissioner is directed to render a final decision within sixty (60) days of Plaintiff's appeal (if any). *See Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) (suggesting that time limits reduce the potential for further hardship to the claimant). To the extent Plaintiff's condition has declined or worsened since the date of the ALJ's decision, Plaintiff is free to reapply for benefits based on those conditions.

SO ORDERED.

Dated: Brooklyn, New York
      September 29, 2017

                                    _____
                                          /s/
                                      DORA L. IRIZARRY
                                        Chief Judge